## JORDAN v. HURST.

An endorser of an over-due note is not discharged by want of notice for three months of the subsequent demand and refusal, there being no evidence that he was injured by such want of notice.

In error from the Common Pleas of Westmoreland.·

Case stated. On the 18th May, 1842, Patterson drew a promissory note in favour of Hurst, the defendant, but not to his order, payable three months after date. On the 18th November, Hurst endorsed and delivered the note to the plaintiff, who demanded payment of the drawer on the 22d. He afterwards brought an action against him, and recovered judgment on the 23d March, 1843. It was stated in the case that the drawer had no property or effects out of which this could be levied.

On the 15th February, 1843, notice of demand and non-payment was given to defendant, and this action brought.

The Court (Knox, P. J.) was of opinion the notice was too late.

*Kuhns* and *Foster*, for plaintiff in error.—The effect of the endorsement of the over-due note was an original undertaking by · the endorser, as if a drawer: 2 Term, 80; 1 Yeat. 360; 9 Watts, 353; 1 Salk. 132; 3 East, 482. The endorsee takes it on the credit of the endorser exclusively: 6 Barr, 164. He may write over the endorsement a promise to pay, and then sue, Doug. 514, 5 Cranch, 151, 3 Mass. 274, where no demand or notice was proved: 12 John. 159, 5 Mass. 358; or he may write a guarantee over the endorsement, 13 John. 175, or any other original undertaking to pay, 13 John. 349. The defendant was not therefore liable contingently merely as by the law merchant, in cases of ordinary endorsements.

*Cowan*, contrà.—If the note was not negotiable, the plaintiff cannot sue; if it was, the contract was but the common contingent one of endorsement: 3 T. R. 80, was merely as to the right of the drawer to make the same defence as if the payee had sued; 1 Yeat. 360, was overruled in 8 S. & R. 351. In 9 Watts, 353, it was held such a note is negotiable by the custom of merchants, and being so, the endorser is entitled to all its protections: 8 S. & R. 351; 13 Mass. 131; 9 John. 121; 2 Conn. 419; 1 Show. 163; 4 Mass. 245; 8 Ib. 260; the two latter decide he is liable in

z 2

the same manner as an endorser before maturity. The necessity of a notice of dishonour is expressly decided in 18 Pick. 260.

COULTER, J.—There is a single point in this cause, but that point is embarrassed by conflicting decisions on the subject.

Hurst, the defendant in error, held a note not negotiable by its tenor upon Patterson, which he endorsed in blank to Jordan, the plaintiff in error, when it was three months over-due, for value. Jordan demanded payment from Patterson in four days after the endorsement, which was refused. But Jordan did not give notice to Hurst for two months and twenty-three days. This suit was brought against Hurst upon his refusal to pay. It is not contained in the stated case that Patterson became insolvent or unable to pay between the date of the endorsement and the notice to Hurst, nor that Hurst suffered any loss from the want of notice. It is merely stated in this case that the said Patterson has no effects or property out of which the said note can be made.

The question to be decided is, whether Jordan, who paid value to Hurst for the note after it was three months over-due, shall lose the amount on account of an alleged technical rule, when it does not appear that Hurst was injured by a departure from that alleged rule. Or whether Hurst, who gave credit to the dishonoured paper by his blank endorsement, and received value from Jordan, shall make it good.

The case of Colt v. Bernant, 18 Pick. 260, rules the exact point that a blank endorsement of an over-due note is the same as if it were endorsed before maturity, and when it was strictly negotiable; and that the endorsee must give notice; that it is by virtue of the mercantile law the endorser is liable, and that he must be subject to and protected by all the incidents of that law. This would seem to be a *non sequitur*. An endorsee of over-due paper takes it subject to all the equities arising out of the same subject-matter existing between the maker and the payee; and yet by the mercantile law, the most distinguishing feature of the endorsement of a note, strictly and properly negotiable, is that it is not subject in the hands of the endorser to any equity or offset against the payee.

That Court, I admit, is one of great authority, and entitled to abundant respect; but we feel restrained by considerations hereafter mentioned from following the opinion of the very able and learned judge who was the organ of the Court. Moreover I cannot but think that the case is much weakened by a previous decision

of the same Court. In the case of Josselin *v.* Oliver, 3 Mass. 275, it was there ruled that the endorsee of an over-due note might lawfully write over a blank endorsement, "For value received, I promise to pay the money within mentioned to E. J." In the case of McKinney *v.* Crawford, 8 S. & R. 351, there is a dictum of Judge Duncan, that the endorsee of an over-due note is bound to make a demand and give notice, else he has no recourse on the endorser.

That case was one of a negotiable note, payable to bearer or order on demand; it was held, as the law undoubtedly is, that there must in such case be a demand and notice, which were both averred in the *narr.* but not proved, in order to charge the endorser. But the judge proceeds to say that the same law is where a note overdue is endorsed, for that there is no difference. Now, to my apprehension, there is a very marked distinction. A note payable on demand wears on its face no evidence of dishonour; there is nothing to excite the suspicion of the endorsee. And it may well be supposed that he takes it subject to the condition of making the demand and giving notice. It is in fact an endorsement before dishonour of the *note*, which is therefore strictly and properly negotiable. But where the note on its face carries the evidence of dishonour, when the day of demand is passed, there is every reason existing in the nature of commercial transactions why the endorser should distrust the credit of the maker, for he has not redeemed his engagement; his "word will not pass on 'Change." There is every reason, therefore, to believe that the endorsee takes the note upon the sole credit of the endorser. The class of cases, however, which I am considering, assert that the blank endorsement of an over-due note amounts to an order to pay on sight, or on demand, and they thus make a new contract for the parties subject to different responsibilities. But the whole tenor of the arrangement forbids this interpretation. It would be equivalent to writing over the endorsement, You have refused to pay the note to me when it was due, therefore pay it to A. B. at sight. The endorsee could draw no such conclusion as that the terms of the note were to be altered; and if he was told that such was the arrangement, he would be apt to reply, You have been unable to compel payment in three months, it is of course out of the question that he would pay me instantly at sight. No, I take this on your credit, *I trust you*, give me your name in blank and I will advance the money. Such would be the natural course of things among men of common sense, versed in business affairs.

But it is alleged on this side of the question, and undoubtedly sup-
ported by many *dicta*, that a note over-due and not negotiable on
its face, is not assignable at common law any more than any
other *chose* of that kind, and that it is only by the commercial law
that it can be endorsed.   That is all true, and it is the same with
a note payable to bearer or order, endorsed before maturity, which
is only legitimately negotiable by the statute of Anne, which places
notes payable to bearer or order on the same footing with bills of
exchange.   The note in question is not payable to bearer or order,
and it could only be endorsed by a liberal construction of the statute
of Anne in favour of trade, and it was for that reason that Courts
held them transferable by endorsement, without words of negotia-
bility; and it is in this respect that those dicta referred to are tried,
to wit, that it is only by the law merchant that notes not negotiable
on their face, are transferable by endorsement.   It does not follow,
however, that when so endorsed, they are subject to all the incidents
of a note endorsed, and negotiable on its face, because a note
endorsed when over-due, is subject to all the equities of the maker
against the endorsee, which strips it of one of the most material
incidents.   And Mr. Justice KENNEDY, in delivering the opinion of
the Court in the case of Leidy *v.* Tammany, says : " It is therefore
clear from the authorities cited, that every endorsement of a note,
especially *after it became payable*, whether it be negotiable in its
tenor or not, is considered, as between the endorser and endorsee, as
*a new note;*" and this agrees with the case of Josselin *v.* Oliver, 3
Mass. 274, above cited, where the endorsee was allowed to insert
an absolute promise to pay over the blank endorsement.   And
this will introduce the authorities on the other side.   The case of
Brown *v.* Davis, 3 Term, 80, has always been considered a leading
case in this state, and repeatedly recognised.   Mr. Justice Buller
says, " My Lord thinks I have gone rather too far in something
that I have said; but it is to be observed, that I am speaking of cases
where the note has been endorsed after it became due, when I consider
it as a note newly drawn by the power endorsing it."   Lord Kenyon
said, I agree with that, with the addition of this circumstance—that
it appears on the face of the note to have been dishonoured, as if
knowledge can be brought home to the endorser that it had been
so.   The other judges assented to Buller's opinion.   Ashurst, Buller,
and Grose were judges of great experience in commercial cases.
Now I take it that when a payee comes to the place of residence
of the maker with a note three months over-due, and sells it to raise

money, there is evidence on the face of the note, to satisfy the endorser that it had been dishonoured, and that would fulfil even the qualification of Lord Kenyon. The first decision of this Court on the subject is Bank of N. America v. Barrier, 1 Yeates, 360, in which it was ruled, that the endorsee could recover against the endorser who endorsed after the note became due, without notice, the objection being made and strongly urged. In that case no demand was made on the maker, nor notice given to the endorser after the endorsement. The decision of the cause was thrown upon Chief Justice McKEAN, and for that reason he says that he had taken time to deliberate. He approves of the opinion of Judge Buller, in Brown v. Davis, and says that it goes the whole length of that cause. He adds, to be sure, some observations upon the facts of the case, but in no other way than judges often do, to show that the law conforms to justice. The observations of Judge DUNCAN in McKenny v. Crawford, that it was ruled on the particular circumstances, will not be sustained by a careful inspection of the case. It is only necessary to state a particular expression in addition to what I have cited, to show that he ruled the case on the law. Adjudications in England, he says, since the revolution are not equally binding on us as those previous to the declaration of independence. But when they are founded on sound principles of law, general convenience, applicable to our situation, and good sense, they will have weight. In Leidy v. Tammany, 9 Watts, 253, the note in that case, as here, was not negotiable by its tenor, it was endorsed when over-due, and the endorsee brought suit against the endorser, after the maker refused payment. There was no averment of notice in the narr., nor any proved; and this Court held that the plaintiff was entitled to recover. Judge KENNEDY, who delivered the opinion of the Court, recognises the authority of Brown v. Davis, in 3 Term Rep., and emphatically recognises the authority of the Bank v. Barriere, 1 Yeates, 360, and says the case he had in hand was fully governed by it. In strict conformity with this view of the case is the opinion of the present Chief Justice, in Snyder v. Ryley, 6 Barr, 164. That the endorsee of an over-due note takes it solely on the credit of the endorser; and if the endorsee so takes it, the endorser transfers it on his own credit, and is bound to answer for it if the maker does not pay on demand, to which he must look himself.

The acceptance of a bill of exchange made after the time appointed for its payment, was held to amount to a promise to pay

generally, 1 Lord Raymond, 364, without regard to the terms of the bill. In Campbell *v.* Britton, 14 Johnston's Rep. 349, it was ruled that the holder of a note endorsed in blank is authorized to write an engagement over the name of the endorser, so that he may recover as on an original undertaking. On the whole, although there are respectable authorities the other way, we are of opinion that the endorsement of a note, after it has become payable and is dishonoured by the maker, is to be considered as a maker of a new note for the amount to the endorsee, and that the endorsee may resort to him for payment without notice, after the original maker has refused payment.

It is the spirit of the law so to adjust its principles as not to work injustice to any one. Hurst received value for the note from Jordan. It is not alleged that he suffered any loss within the two months and twenty-three days from demand until notice, nor that in that time the circumstances of Patterson became worse. If Jordan failed in this suit, he would lose all the money he advanced to Hurst, on his sole credit, without having done any act, or been guilty of any omission, by which Hurst was injured.

> Judgment on the stated case reversed, and judgment for the plaintiff in error.